UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Wells Fargo Bank, National Association, as Trustee for the Benefit of the Registered Holders of Benchmark 2020-B20 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B20, through its special servicer Argentic Services Company LP,<br><br>  Plaintiff,<br><br>  v.<br><br>Mich Troy Technology LLC, a Delaware limited liability company,<br><br>  Defendant. | Case No.  24-cv-10241 |

# COMPLAINT

Plaintiff Wells Fargo Bank, National Association, as Trustee for the Benefit of the Registered Holders of Benchmark 2020-B20 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B20 ("Plaintiff" or "Lender"), by its attorneys, Holland & Knight LLP for its Complaint against Defendant, states as follows:

## PARTIES

1. Plaintiff is a national banking association whose main office is located in the State of South Dakota and its principal place of business is located in

1

the State of California.

2. Defendant Mich Troy Technology LLC, is a Delaware limited liability company, ("Defendant" or "Borrower") doing business in Oakland County, Michigan.

3. Troy Technology Holdings LLC, a Delaware limited liability company, is the sole member of Defendant.

4. Mr. Boruch "Barry" Drillman who resides at 9 Emerald Lane, Suffern, New York, 10901-3217 is the sole member of Troy Technology Holdings LLC.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties are citizens of different states.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff requests, among other things, the appointment of a Receiver to operate commercial property located at 1835-1975 Technology Drive, Troy, Michigan 48083 and 1960 Ring Drive, Troy, Michigan.

## GENERAL ALLEGATIONS

7. Lender incorporates the preceding paragraphs by reference as though fully set forth herein.

**THE LOAN AND LOAN DOCUMENTS**

8. Borrower owns retail properties located in the City of Troy, Oakland County, Michigan commonly known as 1835-1975 Technology Drive, Troy, Michigan 48083 and 1960 Ring Drive, Troy, Michigan 48083 (the "Property"), as more particularly described in **EXHIBIT A**.

9. On or about September 25, 2020, Borrower received a commercial mortgage loan from JPMorgan Chase Bank, National Association, a national banking association ("Original Lender") in the original principal amount of $45,000,000.00 (the "Loan").

10. The documents executed and delivered by Borrower to Original Lender in connection with the origination of the Loan include, but are not limited to, the following:

    (a) A *Promissory Note* dated effective as of September 25, 2020 and executed by Borrower in the original principal amount of $45,000,000.00 (the "Note"), a true and accurate copy of which is attached as **EXHIBIT B**.

    (b) A *Loan Agreement* dated effective as of September 25, 2020 and executed by Borrower (the "Loan Agreement"), a true and accurate copy of which is attached as **EXHIBIT C**.

    (c) A *Mortgage* dated effective as of September 25, 2020 and recorded October 8, 2020 in Instrument Liber 54964 Page 29, Oakland County Records, (the "Mortgage"), a true and accurate copy of which is attached as **EXHIBIT D** (collectively, the "Loan Documents.")

11. To perfect its security interest in Borrower's personal property, Original Lender filed a UCC-1 Financing Statement on September 29, 2020 as Instrument No. 20206722716, Delaware Department of State (together with all amendments and continuations, the "Financing Statement"), a true and accurate copy of which is attached as **EXHIBIT E**.

**SPLITTER AGREEMENT**

12. On September 30, 2020, the parties entered into a Note Splitter and Modification Agreement and Omnibus Amendment to Loan Documents attached hereto as **EXHIBIT F**.

13. The Splitter Agreement divided the Loan into two separate Promissory Notes, A-1 for $25,000,000 ("the A-1 Note") and A-2 for $20,000,000 ("the A-2 Note") See Promissory Notes, EXHIBIT B.

**ASSIGNMENT OF THE LOAN AND LOAN DOCUMENTS TO LENDER**

14. Original Lender assigned the A-1 Note and Loan Documents to Lender.

15. The documents executed and delivered in connection with the assignment of the Loan and Loan Documents to Lender include, but are not limited to, the following:

    (a) *Allonge to Promissory Note* endorsing and assigning the A-1 Note to Lender, a true and accurate copy of which is attached to and a part of the Note attached as EXHIBIT B;

    (b) A *Co-Lender Agreement* dated as of October 30, 2020 between Original Lender, respectfully as Initial Note A-1 Holder and initial A-2 Holder, was entered into to memorialize the parties agreement that the Special Servicer has authority to act on behalf both of the A-1 and A-2 Notes and to bring any action, if necessary. (See Co-Lender Agreement, Section 5, p. 22, **EXHIBIT G**.)

    (c) A *General Assignment* dated October 30, 2020, was executed by Original Lender, in its capacity as lead securitization note holder (the A-1 Note) assigning the A-1 Note to Lender, a true and accurate copy of which is attached as **EXHIBIT H**.

16. The Financing Statement was assigned to Lender by virtue of a UCC-3 Financing Statement Amendment filed on December 7, 2020, as Document No. 2020 8564355, Delaware Department of State, a true and accurate copy of which is part of **EXHIBIT I**.

17. Accordingly, Lender is the holder of the Loan and Loan Documents with full authority to file this action.

**DEFAULTS UNDER THE LOAN AND RECEIVER PROVISIONS**

18. Borrower is in default of the terms of the Loan and Loan Documents. These defaults include, but are not limited to, failure to make the monthly installment payments due in December, 2023 and for each subsequent month.

19. Moreover, the sponsor of the Loan and Manager of Borrower, Boruch "Barry" Drillman pled guilty to conspiracy to commit wire fraud affecting a financial institution which fraudulent activity included the subject property. (See U.S. Dept. of Justice, Plea Agreement, Case No. 3:23-cr-01053-RK, Doc. 6 dated 12/13/23,

5

Dist. Ct. N.J., **EXHIBIT J**.)

20. Lender, through counsel, sent formal notice to Borrower of these defaults on January 10, 2024, accelerated the maturity of the Loan and demanded that all amounts due and owing under the Loan Documents be paid immediately. A copy of this letter is attached as **EXHIBIT K**.

21. Despite demand, Borrower has failed to respond or pay the amounts due and owing under the Loan Documents.

22. As of January 25, 2024, the principal balance due is $44,120,764.85, which amount does not include any prepayment premiums, interest, default interest, late fees and legal fees.

23. When it signed the Mortgage, Borrower expressly consented to an *ex parte* appointment of a receiver after a default on the Loan:

> **Section 7.1 Remedies**. Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, *without notice or demand,* as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including but not limit to, the following actions, each of which may be pursue concurrently or otherwise at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:
>
> > (e) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;
> >
> > \*          \*          \*
> >
> > (g) apply for the appointment of a receiver, trustee,

> liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Debt;

(Mortgage at p. 12, EXHIBIT D.)

24. In addition, under the Mortgage, Lender is immediately entitled to all Rents (as defined in the Mortgage) after an event of default. EXHIBIT D, ¶19 (the "Assignment of Rents" provision).

> **Section 1.2 Assignment of Rents**. Borrower hereby absolutely and unconditionally assigns to Lender as collateral all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Cash Management Agreement and Section 7.l (h) of this Mortgage and compliance with applicable statutes, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Borrower is making the foregoing assignment in accordance with and for all purposes permitted by the provisions of Act No. 210 of the Michigan Public Acts of 1953, as amended, and Act No. 228 of the Michigan Public Acts of 1925, as amended and as applicable.

(Mortgage at p. 5, EXHIBIT D.)

25. Lender has satisfied all conditions precedent to this action, if any.

## COUNT I
## ENFORCEMENT OF MORTGAGE

26. Lender incorporates the preceding paragraphs by reference.

27. Under the Assignment of Rents contained in the Mortgage, Borrower was granted a license to collect the rents from the Property until the occurrence of a default. (See Mortgage, EXHIBIT D, §1.2, p 5.)

28. Borrower has defaulted under the Loan and the Loan Documents, as described above.

29. Upon Borrower's default, Borrower's license to collect the rents from the Property was immediately and automatically revoked. (See Mortgage, EXHIBIT D, §1.2, p 5.)

30. Lender informed Borrower of its defaults in the terms of the Loan and the Loan Documents. (See Default Letter, Exhibit K.)

31. Pursuant to the Assignment of Rents, upon default, Lender is entitled to collect all Rents from the Property.

32. Lender is also entitled to the appointment of a receiver upon default. (Mortgage at p. 12, EXHIBIT D.)

33. The appointment of a receiver is necessary to preserve Lender's interest in the Property.

34. Because Lender does not have physical possession of the Property, it is unable to operate or manage the Property, to apply rents, profits, or revenues for the benefit of the Property, including the payment tenant improvements.

35. For the foregoing reasons, the Property is in jeopardy and Lender will

suffer severe and irreparable injury unless immediate steps are taken to secure the Property, to place possession of the Property in the hands of a receiver, to authorize the receiver to pay any outstanding real estate taxes, to collect rents, profits, revenue income and other benefits generated by the Property, and to apply such income to discharge the expenses incurred in connection with the operation and management of the Property, all subject to the direction of the Court, during the pendency of these proceedings.

## COUNT II

## **PRELIMINARY INJUNCTION**

36. Lender incorporates the preceding paragraphs by reference.

37. Upon information and belief, defendant is in control of the Mortgaged Property.

38. Defendant's failure to fulfill its obligations to the Lender is a breach of the terms of the Note and the Mortgage.

39. It is necessary for a preliminary injunction to be entered to protect and preserve Lender's interest in the Mortgaged Property and the personal property on which it has a lien, and to permit it to enforce its rights under the Notes and Mortgage. Furthermore, it is necessary for this Court to enter a preliminary injunction to avoid irreparable harm and waste to the Mortgaged Property.

WHEREFORE, Lender requests that this Court:

A. A preliminary injunction against defendant and its agent and employees (as well as any other persons with knowledge of this Court's order) barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing the Property or any part thereof or any personal property on which Lender has a lien, or any proceeds of the same, including rents, profits, and revenues, until a receiver is appointed and/or until Lender foreclosures and receives possession of the Mortgaged Property;

B. Appoint a receiver of the Property for the purpose of enforcing the Assignment of Rents and preventing waste, and providing supervision and operation of the Property, with the authority to take possession of the Property, with the authority to do all things necessary or appropriate to obtain maximum realization from the Property and to preserve and protect these assets and exercise such control and management of them (including repair, maintenance, payment of taxes, payment of insurance, and payment of indebtedness to Lender) as the Court may direct, pursuant to the provisions of the applicable statutes and rules;

C. Authorize the receiver to sell the Property free and clear of liens and redemption rights;

D. Order Borrower and/or Manager to turn over to the receiver all income from the Property, from and after the first date of default;

E. Enjoin Borrower, Manager, and all persons acting by or in concert with them from interfering in any manner with the receiver's operation and management of the Property and any collateral, collection of rents or other income generated from the operation of the Property or any collateral or the receiver's performance of any other powers or duties conferred upon the receiver by this Court, all during the pendency of this action;

10

        and to grant the receiver such other authority as the Court may deem fair and equitable;

F.      Award Lender its interest, costs, and attorneys' fees as provided under the
Loan Documents and by law.

G.      Award Lender such other relief as the Court deems just and equitable.

Dated: January 30, 2024

**Holland & Knight LLP**


By:   */s/ Cara M. Houck*
       Cara M. Houck

150 N. Riverside Plaza
Tel: (312) 715-6805
Cara.houck@hklaw.com
*Attorneys for Plaintiff Wells Fargo Bank, National Association, as Trustee for the Benefit of the Registered Holders of Benchmark 2020-B20 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B20, through its special servicer Argentic Services Company LP*